OPINION
{¶ 1} Defendant-appellant, Erica L. Orta, appeals the September 1, 2005 judgment of the Court of Common Pleas, Defiance County, Ohio. In this appeal, Orta claims that the trial court erred in denying her motion to withdraw her guilty plea to the indicted charge of murder in violation of R.C. 2903.02(A), a first degree felony. Additionally, Orta claims that the United States Supreme Court decision in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, requires a "jury sentencing hearing" to make findings of fact necessary for sentencing.
 {¶ 2} Orta was initially charged in a seven-count indictment on October 7, 2004. The indicted charges stemmed from an incident that occurred on August 31, 2004, a few days after she had been released from jail. According to the facts submitted on the record at the initial plea hearing, which were based on Orta's statement to the police, Orta and a co-defendant, Joseph Williams, conspired to murder Orta's mother, Diane Atkin. Orta and Williams planned the murder in Lima, Ohio late in the evening on August 30th, and drove from Lima to the victim's home in Defiance County. On the way to Defiance, Orta and Williams stopped at a 24-hour supermarket and purchased a roll of duct tape. When they arrived at the victim's home, they sat down at the kitchen table and exchanged words with the victim. Orta claimed to have had a very contentious relationship with her mother, and at some point during this exchange she became enraged. She leapt over the table and strangled her mother to death.
 {¶ 3} After her mother was dead, Orta took several pieces of jewelry off of the body, then she and Williams used the duct tape to bind the legs together, dragged the victim from the house, and placed her in the trunk of her own car. Orta then drove her mother's vehicle from the residence, ostensibly in order to make it look like the victim had left the home and gone out of town. Williams followed her in the car they had used to drive up to Defiance, and the defendants returned back to Lima. They abandoned the victim's vehicle, with the body still in the trunk, in the City of Lima, Ohio.
 {¶ 4} After the victim was later reported missing, the vehicle was located and her body was found and identified. The corner's report showed that the victim died of asphyxiation due to strangulation. An investigation led police to Orta, who was found wearing the victim's jewelry. During interrogation, Orta confessed to the murder and to having abandoned the vehicle with the body in the trunk of the car.
 {¶ 5} Orta initially pled not guilty to the charges contained in the indictment, which included aggravated murder, murder, aggravated robbery, aggravated burglary, tapering with evidence, grand theft of a motor vehicle, and theft. However, after plea negotiations Orta pled guilty to the second indicted charge, murder in violation of R.C. 2903.02(A), and agreed to testify against her co-defendant, Williams. In exchange for this testimony, the prosecutor agreed to drop the remaining charges against Orta.
 {¶ 6} The trial court accepted the guilty plea at the hearing held on November 1, 2004 after conducting a colloquy with the defendant and informing her of the rights she was waiving by pleading guilty. The trial court determined that the plea was voluntarily given, and that Orta understood the nature of the charges and the potential punishment she faced. The court informed Orta that there was only one available punishment: fifteen years to life imprisonment pursuant to R.C.2929.02(B).[1] Then trial court then scheduled the matter for sentencing on December 6, 2004, and the remaining charges against her were to be dismissed at that hearing.
 {¶ 7} Prior to the sentencing hearing, however, Orta sent a letter to the court asking to withdraw her guilty plea. Her counsel then filed a motion to withdraw as counsel, and new counsel was appointed. Thereafter, additional counsel was appointed to serve as co-counsel.
 {¶ 8} A hearing was held on February 17, 2005 in which the trial court noted that Orta had indicated a desire to withdraw her plea, but that no motion to withdraw had been filed. When asked whether a motion to withdraw the guilty plea would be filed, Orta's new counsel indicated that after discussions with his client, Orta had indicated to him that she did not wish to withdraw her previous plea. At that point, the trial court again indicated to Orta on the record that there was only one available sentence, fifteen years to life imprisonment. However, the court continued the matter so that a pre-sentence investigation report could be filed which would be available for subsequent parole hearings.
 {¶ 9} Prior to the sentencing hearing, however, Orta was asked to testify against her co-defendant pursuant to the original plea agreement. However, at a March 11, 2005 hearing before the court, Orta was sworn in as a witness and took the stand. The prosecutor then asked Orta if she was willing to testify against Williams. At this point, Orta indicated on the record that she was invoking her right not to incriminate herself under the Fifth Amendment to the United States Constitution, and refused to testify. Thereafter, the additional charges against her were reinstated.
 {¶ 10} Now faced with having pled to murder and having the additional charges still pending against her, Orta wrote a second letter to the trial court requesting to withdraw her guilty plea. A hearing was held on March 31, 2005, Orta orally moved to withdraw her guilty plea. Orta's counsel, however, indicated on the record that they did not feel there was a factual and legal basis which supported Orta's motion, and were given leave to withdraw as counsel. The trial court overruled the motion to withdraw her plea, and proceeded to sentencing. Pursuant to R.C.2929.02(B), the trial court imposed a prison sentence of fifteen years to life. Orta now appeals, asserting one assignment of error:
The trial court abused its discretion in denying appellant'smotion to withdraw her guilty plea when the guilty plea violatedCriminal Rule 11 and the Sixth Amendment Jury Trial Guarantee asset forth by the United States Supreme Court.
 {¶ 11} In this assignment of error, Orta makes two arguments. First, she argues that she should have been permitted to withdraw her plea prior to sentencing pursuant to Crim.R. 32.1. Second, she argues that the trial court was prohibited from imposing a sentence pursuant to the United States Supreme Court decision inBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531.
 {¶ 12} With regards to Orta's attempt to withdraw her guilty plea, Crim.R. 32.1 allows a criminal defendant file a motion to withdraw a guilty plea prior to sentencing, but does not provide guidelines for a trial court to use when ruling on such a motion.State v. Xie (1992), 62 Ohio St.3d 521, ¶ 1 of the syllabus,584 N.E.2d 715. The general rule is that motions to withdraw a guilty plea prior to sentencing are to be freely given and treated with liberality. Id. However, the right to withdraw a plea in this situation is not absolute. Id. When making its determination, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea. Id. Thereafter, the decision to grant or deny the motion is within the sound discretion of the court. Id. at ¶ 2 of the syllabus. Absent an abuse of discretion, an appellate court should not disturb the trial court's ruling. Id. at 527. An abuse of discretion connotes that the trial court's determination is arbitrary, unreasonable, or capricious. Statev. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 13} Ohio courts have laid out several factors to consider in reviewing a trial court's determination of whether there is a reasonable and legitimate basis for withdrawing a plea. These factors include: (1) whether the withdrawal will prejudice the state, (2) the representation afforded to the defendant by counsel, (3) the extent of the hearing held pursuant to Crim.R. 11, (4) the extent of the hearing on the motion to withdraw the plea, (5) whether the trial court gave full and fair consideration of the motion, (6) whether the timing of the motion was reasonable, (7) the stated reasons for the motion, (8) whether the defendant understood the nature of the charges and potential sentences, and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. State v. Lane,
Allen App. No. 1-01-69, ___, 2001-Ohio-2299 (citing State v.Griffin (2001), 141 Ohio App3d 551, 554, 752 N.E.2d 310.
 {¶ 14} Upon consideration of those factors, and while we note there would be little prejudice to the state in permitting Orta to withdraw her plea, we cannot say that the trial court abused its discretion in denying Orta's motion to withdraw. First, Orta was provided three separate attorneys to represent her, each of whom recommended that she accept the plea bargain. There is absolutely no evidence that her counsel did not zealously represent her interests, and Orta admitted at the change in plea hearing that she was satisfied with her counsel's representation. Moreover, in light of the fact that Orta confessed to the murder charge, there was ample justification to counsel Orta to plea to murder in exchange for dropping the remaining charges.
 {¶ 15} Second, the trial court conducted a thorough colloquy pursuant to Crim.R. 11 when it accepted the guilty plea. The court informed Orta of all of the rights she was waiving in pleading guilty, including the right to a jury trial, the right to confront witnesses, the right to use the compulsory process power, the right to have the state prove all elements of the offense beyond a reasonable doubt, and the Fifth Amendment right not to testify. Moreover, the trial court verified that Orta understood the nature of the charges against her, and repeatedly emphasized the extent of the punishment required for murder charges. The court again determined that Orta understood the nature of the charge and the potential punishment available at the hearing following her first letter requesting to withdraw her plea.
 {¶ 16} Third, although no formal motion had been filed, Orta was permitted to verbally address the court and explain her reasons for wanting to withdraw her plea — that she "thought that the first plea bargain was going to be the best one that [she] could possibly get [and she] was scared into taking it." The court gave full consideration her stated reasons; however, due to the fact that Orta had twice knowingly, voluntarily, and intelligently indicated to the court that she was aware of the nature of the charges and the potential punishment, the court chose not to accept her stated rationale.
 {¶ 17} Fourth, her stated reasons for seeking to withdraw her plea are unpersuasive, and there was strong evidence that Orta was in fact guilty and lacked a complete defense to the charge. Orta fully confessed her crimes to the police, admitting her guilt. It is apparent both from her stated rationale at the hearing and from her letter to the court that Orta's sole goal was to minimize her sentence; she never once asserted her innocence or claimed that she was unduly pressured into accepting the plea bargain. Rather, it is much more likely that she sought to withdraw the plea simply because she failed to fulfill the conditions of her bargain by refusing to testify against her co-defendant. Faced with having the remaining charges reinstated against her, Orta saw no tangible benefit to her previous guilty plea.
 {¶ 18} Based on the foregoing, we find that the trial court did not abuse its discretion in denying Orta's motion.
 {¶ 19} We next address Orta's argument that the Blakely
decision prohibits the trial judge in this case from imposing a sentence on her. As this Court has previously recognized, the Supreme Court in Blakely held that the "statutory maximum" punishment available is "the maximum sentence a judge may imposesolely on the basis of the facts reflected in the jury verdictor admitted by the defendant." Blakely, 542 U.S. at 303. Orta appears to contend that the Blakely decision requires a jury to make all of the necessary findings prior to sentencing. For the reasons that follow, this assignment of error is not well taken.
 {¶ 20} First, the statutory scheme in this case makes Orta susceptible to only one punishment: an indefinite prison term of fifteen years to life. R.C. 2929.02(B). This is the only sentence available for one who pleads guilty to or is convicted of murder in violation of R.C. 2903.02(A); thus, when the defendant pleads guilty and thereby admits to all of the essential elements of the crime, a term of fifteen to life is the maximum sentence the trial court may impose. Accordingly, the sentence imposed was not contrary to Orta's constitutional jury trial rights as outlined in Blakely.
 {¶ 21} Second, the Supreme Court of Ohio has interpretedBlakely and found various aspects of the Ohio's felony sentencing scheme unconstitutional. State v. Foster, Ohio St.3d, 2006-Ohio-856. It is important to note that R.C.2929.02(B) was not addressed in that decision and was not found unconstitutional. Even more important with regards to Orta's argument, however, the Court specifically refused to impose the remedy Orta seeks — jury sentencing hearings — to bring Ohio's unconstitutional sentencing scheme in line with Blakely. Id. At ¶ 87. Therefore, even if R.C. 2929.02(B) were unconstitutional, jury involvement in sentencing is not permitted under the statutory scheme. Id.
 {¶ 22} Based on the foregoing, Orta's assignment of error is overruled. The judgment and sentence of the trial court is affirmed.
Judgment affirmed.
 Bryant, P.J., and Rogers, J., concur.
[1] R.C. 2929.02(B) provides: "Whoever is convicted of or pleads guilty to murder in violation of section 29030.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life * * *."